Our final case of the day is United States v. Childs. Mr. Cronin. Good morning, Your Honor. Good morning. Mr. Cronin, please proceed. Thank you. I'm here on behalf of Dakota Childs, who was sentenced to 24 months of imprisonment in his second revocation case. By imposing that sentence, the district court went above what would have normally been a 10-month maximum term of imprisonment and imposed a sentence that was not only over three times what the defense was asking for, but nearly two and a half times what the prosecutor was asking for. Mr. Cronin, on that point, why does the point heading in the blue brief and the gray brief characterize the district court's sentences within guideline? I believe, Judge Cronin, that's because the guidelines, what would normally have been the effective maximum of the effective high range of the guidelines, was not the case because it was a higher statutory maximum. Maybe the briefing was in error because the normal guidelines range would have been 8 to 14 months capped at the normal statutory maximum of 10 months. I don't understand why anybody is talking about guidelines ranges. There are no guidelines for revocation of supervised release. There are policy statements, and there's a fundamental statutory difference between guidelines and policy statements. Policy statements were never binding in any way on district courts, and I find it very confusing that the parties refer to one legal regimen as if it were something different. Yes, Your Honor. You know, it appears that the child continued to commit moving violations, he's using and possessing drugs during that second period of supervision. Was the court obligated to wait for him to combine those two things, to commit driving offenses under the influence, before she could infer that he remained a danger on the road and otherwise? No, Your Honor. I think there certainly were facts from this case, which would allow a court to infer that Dakota Child could pose a risk of danger. I conceded that point myself in my arguments to the district court. So really, our complaint is not that there was no possible basis to think that Dakota Child could be a danger, but rather we do believe that there were two procedural errors, and then those were followed by a sentence which was substantively unreasonable. Any one of those defects being enough to justify vacating the sentence and remanding to the district court. You know, one of the things that was argued to the court was that probation and prison had no more programs to offer Mr. Childs, and that his success or failure is, you know, it's in his own hands. Well, if that's the argument that he is basically essentially beyond help, how can it be reversible error for the court to decide to incapacitate him as long as legally possible? I mean, in other words, I guess she felt she was keeping him from endangering himself or others for two years, instead of seven months or 10 months. Maybe he, you know, straighten up and fly right. And certainly specific deterrence is a valid consideration as is incapacitation. But we did argue on Mr. Child's behalf that he wasn't beyond help. Part of our argument was that while he may have been beyond the effective help of what the U.S. probation office could offer him, there were three other options for drug treatment, which he would be able to pursue on his own after his release from imprisonment, that were options not offered by the probation office, namely medically assisted treatment, digital therapeutics and the use of the herb kratom to help quell his drug addiction. And those are not available within the prison system? No, Your Honor, my understanding is that there is not. I do believe that the U.S. probation office for the Southern District of Illinois contracts with treatment service providers which have medically assisted treatment. But my understanding is that's not typically offered to defendants. And I don't know of any instances in which the U.S. probation office has arranged for a digital therapeutics or kratom for supervisees. On Dakota Child's behalf, I have to concede the obvious that he's a recidivist. I mean, there's no doubt about that. But I would respectfully submit that makes procedural protections all the more important for him. And we're relying very heavily on a pair of this court's decisions, the Salgado decision that before substantive reasonableness can be evaluated, it must be determined whether there were any procedural errors. And the Rolerson decision that enhancing a sentence based on a factual error is a significant procedural error. We believe that that's what happened here. And that's part of why we're asking for this sentence to be vacated and remanded. If there are no other questions, I respectfully ask to reserve the rest of my time for rebuttal, please. Thank you, Mr. Cronin. Thank you. Ms. Gross. Good morning, Your Honors, Counsel, and may it please the court. Assistant United States Attorney Zoe Gross on behalf of the government. Your Honors, I was not the attorney who appeared below the court in the lower court, nor did I write the brief, but I have familiarized myself with the case as best as I can, and I hope that I can answer any questions that you have today. The government asks that you affirm the judgment of the district court because the record fails to show that the sentence of 24 months was plainly unreasonable. Contrary to the arguments raised by the appellant, the district court sentence was both procedurally and substantively reasonable. You know, on page 21 of the red brief, the government argues that the situation posed by Mr. Charles' continued addiction left the court with no other alternative other than a significant term of imprisonment. You know, that's a curious argument for the government to make, given the government's own request for a 10-month sentence. So, you know, what's going on? Your Honor, as I mentioned, I wasn't there at the sentencing hearing, and I didn't make the request myself. But I do believe that the court wasn't bound by the government's recommendations or the probation officer's recommendations. It could come up with its own evaluation, and I believe that's what it did. So it is a curious argument to make, but I think that's how the court felt, that, you know, that she had exhausted all of her options and that probation had done everything that it could for the defendant. And although the government did not request above the guideline range. I know there are no guidelines above the policy range. It's not a range. There's no need to get the terminology down, but one should do it. And the substantive question you're asking is the question in a guidelines case whether the sentence was reasonable. It's not. In a revocation case, the question is whether it's plainly unreasonable. There's no burden on anybody to show that it's reasonable. We've worked all of this out in quite a complex series of decisions. We always hope that lawyers pay attention to what we're doing. Yes, sir. Would you agree? Well, does the government agree? Not you, but the government agree that whatever his driving offenses were at the time of that second period of supervision, they didn't involve driving under the influence, right?  Those offenses did not include driving under the influence, but those were just the occasions that the defendant was, you know, arrested for a driving offense. And given the conduct of the. All the rest of the time doesn't, you know, maybe every single time. So what would support the court's inference that he continued to be a safety threat because of his driving? I think the fact that the defendant continued to consume alcohol at all was reasonable for the court to assume that he did have some sort of a danger. Being behind the wheel as an addict and as you know, with his history of substance abuse and operating a motor vehicle. So I do think it was it was reasonable for the court to make that assumption that he posed a continued threat based on his violation of conduct. Now, do you also the government also agree that there's no evidence in the record that he supplied the drug to his friend to overdose? And if not, what would support the inference that he was a danger to anyone as a result of this incident? In other words, is it enough that he supplied a place for his friend to take control of this? Yes, Your Honor, the government would agree that there is no evidence in the record that he was the one who supplied the substances to his friend who overdosed. The judge did have information before her from probation that the event happened at his home. There were also several monitor reads on the defendant's ankle bracelet that he was consuming alcohol that day. The defendant also tested positive the very next day for some substances. So I don't think that it was unreasonable for the court to assume that the defendant was partaking in in substance use at the time that his friend overdosed. And I think that was a reasonable assumption for the court to make. OK, well, if the court does not have any other questions for the government, we will rest on our briefs. Thank you for your time. Thank you, Ms. Gross. Anything further, Mr. Cronin? Just, Your Honor, that I believe that even under the plainly unreasonable standard with factual errors resulting in procedural errors, that would satisfy the plainly unreasonable standard. And that's part of what we're relying on this morning. Well, then, thank you very much. Thanks to both counsel. The case is taken under advisement and the court will be in recess.